[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11757
Non-Argument Calendar

_____

D. C. Docket No. 05-00208-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAPHAEL BERNARD BRADBERRY,
a.k.a. Ralph,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(October 11, 2006)

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Raphael Bernard Bradberry appeals his conviction and 14-month sentence for possession of a firearm in a school zone, in violation of 18 U.S.C. § 922(q)(2)(A). On appeal, Bradberry argues that the district court abused its discretion in admitting, under Rule 403 of the Federal Rules of Evidence, evidence relating to the Maysville Soldiers gang. He challenges his sentence on the ground that the district court erred by applying an obstruction of justice enhancement, under U.S.S.G. § 3C1.1, on the ground that he suborned perjury. For the reasons set forth more fully below, we affirm.

Prior to trial, Bradberry unsuccessfully moved to suppress, among other evidence, his alleged post-arrest statements on the ground that he was not read, and did not waive, his Miranda[1] rights, in violation of the Fifth Amendment. At the hearing on his motion to suppress, the government's witnesses, Mobile Police Department Officers Joseph Chavis and Terrance Jones, testified that Bradberry was given his Miranda warnings. Chavis further testified that Bradberry subsequently stated that he found the gun on the car floor when he entered the vehicle, picked it up, held it, and put it back under the seat upon arriving at the school. Bradberry's witness, Keith Jordan, the driver of the car, testified that he was placed in the same police car as Bradberry and that he was read his Miranda

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

rights, but Bradberry was not. Jordan further testified that he did not see the gun or Bradberry handling it, and, while in the police car, he never heard law enforcement ask Bradberry any questions or Bradberry say anything about the gun, except that Bradberry denied knowing that the gun was in the car. In addition, Bradberry unsuccessfully moved for the exclusion, under Rules 401-403 of the Federal Rules of Evidence, of any testimony that he or the Davis brothers were connected to a gang called the Maysville Soldiers.

Although the testimony at trial conflicted in various respects, the undisputed evidence showed that Bradberry was a passenger in a vehicle driven by Keith Jordan when Jordan arrived at Williamson High School. Jordan and Bradberry were arrested, and, following the arrests, a gun was found in Jordan's vehicle. As to what transpired after the arrests, Officer Chavis testified that he took Bradberry into custody, Jordan and Bradberry were not placed in the same police vehicle, and he read Bradberry his <u>Miranda</u> rights. After the gun was found, Bradberry told Chavis that he saw the gun when he first got in the vehicle, had been playing with it, and shoved it back under the seat when he got near the school. Bradberry also stated that the gun did not belong to him, but would not state who owned the gun. Jordan related a conflicting version of events. He testified that he was placed in the back of the police car with Bradberry and Anthony Davis. He sat on the left

3

side of the car and Bradberry sat on the right. Jordan testified that the officer that searched him came to his side of the car and read him his Miranda rights.

The government's theory of the case was that Bradberry was present at the school as part of a group that was going to retaliate for an earlier incident. The government offered the testimony of Marlon Firle, Williamson High School's Assistant Principal, who stated that he received information that there might be an altercation on campus stemming from a problem in the community between the Davis family and another family. Firle was concerned about possible violence stemming from a fight between two students, Rashad Body and Terrell Young, that occurred earlier that day. Firle testified that the following vehicles were involved in the possible disturbance: a black Hummer, a Mazda 929, and a maroon Toyota Corolla. Jordan drove the Mazda, and Anthony Davis drove the Toyota. Firle stated that Anthony Davis and Jordan were "associated with" Body.

According to Firle, Jordan and Anthony Davis had been on campus earlier in the day, and, after Anthony Davis returned to the campus, Firle called the police. Jordan's Mazda arrived at the school at relatively the same time as the Hummer, from which one of the Davis brothers exited. Resource Officer Williams told Jordan to leave and Jordan was arrested after he came onto the campus.

Officer Chavis testified that Rodney Davis was the third person in the

Mazda. He also explained that the Davises were affiliated with the Maysville Soldiers, a local gang, and that the gang placed "MVS" on the back of their cars and on hats.

Bradberry's theory of the case was that he and Jordan had no connection with the alleged retaliation, he was merely a passenger in the vehicle, and he did not possess the gun. Bradberry called Antonio Reed and Jordan to testify in his defense. Reed testified that he purchased the gun found in Jordan's vehicle and, the night before Bradberry was arrested, was driving with Jordan with the gun under the passenger's seat. He explained that, when Jordan dropped him off, he forgot to get the gun out of the car. Jordan also testified that he was driving around with Reed the night before his arrest, but that Reed dropped him off at his aunt's house and kept the car until the next morning. Jordan stated that he went to the school once that day, to pick up his cousin, and that he picked up Bradberry on the way there. Jordan stated that he went into the school building and was taken into custody by law enforcement when he was leaving the school. Jordan denied knowing about the fight, denied seeing the Hummer or talking to Williams, and denied seeing the gun or seeing Bradberry handle the gun.

When questioned by the government, Reed denied that the Davis brothers were in a group called the Maysville Soldiers, but admitted that he saw t-shirts that

5

said "MVS." He explained that the Davises, Jordan, Bradberry, and himself were all just friends. When questioned by the government, Jordan denied any knowledge of the Maysville Soldiers, but admitted that he saw people, including the Davises, with hats and t-shirts that said "MVS."

In rebuttal, the government offered the testimony of Nelson Brown of the Mobile Police Department. Brown testified that he obtained pictures after conducting a search of a residence identified as the primary residence of Floyd, Demario, and Rodney Davis and a hangout of the Maysville Soldiers. One picture showed Reed wearing a white "MVS" baseball cap and another showed Reed making an "M" sign, which Brown explained was consistent with a gang sign specifically for the Maysville Soldiers.

The jury returned a guilty verdict and, at sentencing, Bradberry objected to a two-level obstruction of justice enhancement, which was applied on the ground that Bradberry suborned perjury at trial. In addition to questioning the falsity and materiality of the testimony, Bradberry objected to the enhancement on the ground that there was no evidence that he asked the witnesses to testify falsely. The district court found that Reed and Jordan testified falsely, and that the testimony regarding whether Bradberry was read his Miranda rights was material. As to whether Bradberry suborned perjury, the district court stated,

6

The other issue is whether or not that testimony was suborned. And it seems to me that the Defendant calls a witness to testify, he is presumed to know what that witness will testify to. And you know, if that testimony is false, the attribution of knowledge of the false testimony goes to the Defendant.

And therefore, I find that in this case, Mr. Bradberry suborned that perjury from at least Mr. Jordan and from Mr. Reed and, accordingly, the obstruction of justice enhancement should apply.

We review the district court's admission of evidence over a defendant's objection pursuant to Fed.R.Evid. 403 for abuse of discretion. United States v. Jernigan, 341 F.3d 1273, 1284 (11th Cir. 2003). As to the obstruction of justice enhancement, we review the district court's findings of fact for clear error and the application of the Guidelines to those facts de novo. United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006).

## I. Evidence of gang membership

Bradberry argues that the admission of evidence relating to the Maysville Soldiers gang should have been excluded under Fed.R.Evid. 403 because the unfair prejudicial effect of gang-related evidence substantially outweighed its probative value. First, Bradberry contends that there was no evidence that he was a member of the gang, and that evidence of the Davis brothers' membership was used in an effort to establish guilt by association. Second, he argues that the government did not need the evidence to establish motive, as it could do so based on (1) the altercation between Young and Body, and (2) Body's association with Jordan and

7

one of the Davis brothers.  Third, Bradberry argues that there was no evidence that the incident at the high school was a gang-related event.

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403.  In evaluating the district court's ruling under Rule 403, we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.  Jernigan, 341 F.3d at 1284. "Only if the decision to admit evidence over a Rule 403 challenge is unsupportable when the evidence is viewed in the light most supportive of the decision will we say that the decision constitutes an abuse of discretion."  Id. at 1285.  We have recognized the potential prejudicial effect of introducing evidence of a defendant's gang membership.  Id. at 1284-85.  We have also recognized that:

> Inherent in [the abuse of discretion] standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury. For these reasons, the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas.

Id. at 1285.  Close questions of admissibility under Rule 403 give rise to the abuse of discretion standard of review and fall "squarely within the ambit of the district

8

court's sound discretion." Id.

The implication of the government's questioning regarding the Maysville Soldiers was that the Davises, Jordan, Reed, and Bradberry were all members of the gang. Evidence that Bradberry and Jordan were in the same gang as the Davises made the government's theory of the case more likely. This testimony did not simply imply that Bradberry was a bad person or that, by virtue of being a gang member, he knowingly possessed a gun. Instead, evidence of Bradberry and Jordan's gang membership helped explain why they were at the school at that time. However, introduction of evidence suggesting that Bradberry was a gang member carries the potential for undue prejudice. See id. at 1284-85. This case presents a close question and, thus, "it fell squarely within the ambit of the district court's sound discretion." Id. at 1285. For this reason, there was no abuse of discretion by the district court. See id.

## II. Obstruction of justice enhancement

Bradberry argues that the district court erred in applying an obstruction of justice enhancement because there was no evidence that he willfully procured the false testimony of Reed and Jordan. Bradberry asserts that knowledge of false testimony alone is insufficient, as there must be evidence that he induced or procured the false testimony, and, at worst, he allowed Reed and Jordan to give

perjured testimony, which was not a sufficient basis for the enhancement.

The Guidelines provide for a two-level increase in the offense level

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

U.S.S.G. § 3C1.1.  Suborning perjury is among the examples of conduct warranting this enhancement.  Id., comment. (n.4(b)).  In addition, "the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."  Id., comment. (n.9).

"Perjury, for purposes of applying this enhancement, has been defined by the United States Supreme Court as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'"  United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002) (quoting United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)).  A person suborns perjury when he "procures another to commit any perjury." 18 U.S.C.A. § 1622; see also Dunnigan, 507 U.S. at 94, 113 S.Ct. at 1116 (applying definition of perjury from 18 U.S.C. § 1621, the criminal perjury statute, to § 3C1.1).

10

'Subornation of perjury consists in procuring or instigating another to commit the crime of perjury.'

'It is essential to subornation of perjury that the suborner should have known or believed or have had good reason to believe that the testimony given would be false; that he should have known or believed that the witness would testify willfully and corruptly, and with knowledge of the falsity; and that he should have knowingly and willfully induced or procured the witness to give such false testimony.'

Petite v. United States, 262 F.2d 788, 794 (4th Cir. 1959), remanded on other grounds, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (quoting 70 C.J.S. 1951 Perjury § 79).

As an initial matter, we note that Bradberry does not challenge the district court's findings as to the falsity or materiality of the witnesses' testimony. Thus, the issue is whether an obstruction of justice enhancement can be applied when the defendant calls a witness to testify on his behalf knowing that the witness will give perjured testimony. We hold that by doing so the defendant suborns perjury or, at least, "aid[s] or abett[s], . . . procure[s], or willfully cause[s]" the witness's perjured testimony. U.S.S.G. § 3C1.1, comment. (n.9); see also United States v. Rudisill, 187 F.3d 1260, 1265 (11th Cir. 1999) (holding that assistance of conduct, in and of itself obstructive, warranted enhancement on an aiding and abetting theory). The defendant is directly responsible for the proffering of the perjured testimony before the court. By knowingly facilitating the presentation of false

11

testimony before the court, a defendant does more than just allow a witness to give perjured testimony; rather, he acts in a manner that obstructs the administration of justice.

Based on the facts of this case, the district court did not clearly err in applying the enhancement. At least with respect to Jordan's testimony regarding whether he was in the police car with Bradberry and who received Miranda warnings, there is a clear basis in the record to find that Bradberry suborned perjury. First, Bradberry had personal knowledge of the truth or falsity of Jordan's testimony because Jordan described an event at which both he and Bradberry were allegedly present. Second, Bradberry had knowledge of Jordan's testimony prior to trial because Jordan testified at the suppression hearing. By knowing that Jordan's testimony was false, but choosing to call Jordan in his own defense, Bradberry procured Jordan's testimony at trial and, thereby, either suborned perjury or "aided or abetted, . . . procured, or willfully caused" Jordan's perjury before the district court. U.S.S.G. § 3C1.1, comment. (n.9).

In light of the foregoing, we find no reversible error in the admission of evidence relating to the Maysville Soldiers gang or the obstruction of justice enhancement. Accordingly, Bradberry's conviction and sentence are

**AFFIRMED.**

12