[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2010
JOHN LEY
CLERK

_____

No. 09-16327
Non-Argument Calendar

_____

D. C. Docket No. 08-00443-CR-1-TWT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES HOWARD COOK,
d.b.a. PCDirectBiz.com.Inc.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 16, 2010)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

James Howard Cook appeals from his sentences following his convictions

for wire fraud, in violation of 18 U.S.C. § 1343.  Cook argues that the district court

erred in (1) determining the loss amount, which resulted in an 18-level offense level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(J); (2) imposing a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1; and (3) determining the restitution amount. After careful review, we affirm.

We review the district court's loss determination for clear error. United States v. Woodard, 459 F.3d 1078, 1087 (11th Cir. 2006). When considering an obstruction of justice enhancement under U.S.S.G. § 3C1.1, we review the district court's findings of fact for clear error and the application of the Guidelines to those facts de novo. United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006). We review de novo the legality of a restitution order, for abuse of discretion the determination of the restitution value of lost or destroyed property, and for clear error the factual findings underlying a restitution order. United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008).

In November 2008, a federal grand jury indicted Cook on seven counts of wire fraud, in violation of 18 U.S.C. § 1343. The indictment alleged that Cook owned and operated PCDirectBiz.com ("PCDirect"). In order to obtain money for his company, Cook made false representations to Bowsprit Funding I, LLC ("Bowsprit I") and Bowsprit Funding II, LLC ("Bowsprit II"), each established by Thomas Digan, and misrepresented the value of collateral in the form of accounts

2

receivable of PCDirect web customers and the assets of PCDirect. As a result of these misrepresentations, on June 26, 2006, Bowsprit I transferred a $1,320,220.10 loan from its Evanston, Illinois bank account to Cook's PCDirect bank account in Atlanta, Georgia. Also, on December 11, 2006, Bowsprit II transferred a $3,228,229.82 loan from its Evanston, Illinois bank account to Cook's PCDirect bank account in Atlanta, Georgia.

On February 23, 2009, Cook pled guilty to all seven counts, without a plea agreement, and the court adjudicated him guilty. At sentencing, Digan testified that he was the president and sole employee of Bowsprit I and Bowsprit II. After having acted as a broker for three previous loans to Cook, Digan formed Bowsprit I to make a loan in its own name to Cook's PCDirect business. After borrowing money from The Patriot Group, which was acting as Washington Offshore Funding I, LLC, Bowsprit I loaned the money to Cook in June 2006. Similarly, after borrowing money from The Patriot Group, which was acting as Washington Special Opportunity Fund, LLC, Bowsprit II loaned the money to Cook in December 2006. The two loans to Cook totaled $4,548,449.

Digan further testified that Cook had repaid some of the loans to Bowsprit I and Bowsprit II, but that Cook still owed approximately $2,969,000 on the two loans. Cook presented no evidence as to the loss amount, arguing only that The

Patriot Group actually supplied the money, which required a Patriot Group witness to testify to the actual loss amount.

First, we are unpersuaded by Cook's claim that because the government presented insufficient evidence to prove the actual loss amount, the district court improperly increased his offense level by 18 levels. For offenses involving fraud, the Guidelines provide an increase to a defendant's offense level depending on the amount of loss that resulted from the fraud. U.S.S.G. § 2B1.1(b)(1). The offense level is increased by 18 where the loss amount is greater than $2,500,000, but less than $7,000,000. U.S.S.G. § 2B1.1(b)(1)(J)-(K). When calculating loss for sentencing purposes, the district court looks to "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1), comment. (n.3(A)). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense," and intended loss is "the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1(b)(1), comment. (n.3(A)(i)-(ii)).

The government bears the burden of supporting its loss calculation with "reliable and specific evidence." United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997). A district court's finding of loss under § 2B1.1 is entitled to "appropriate deference." United States v. Willis, 560 F.3d 1246, 1251 (11th Cir. 2009) (quotation omitted).

On this record, the district court did not clearly err in its loss amount calculation. At sentencing, Digan testified that the two loans to Cook from Bowsprit I and Bowsprit II totaled $4,548,449. Cook presented no evidence that this total was incorrect, arguing only that since Digan borrowed the money from The Patriot Group someone from The Patriot Group needed to testify to the loss amount. The district court appropriately found this argument to be without merit, since Digan's source of funds to make the loans did not matter, only that Digan lent the money to Cook -- money that Digan lost when Cook failed to repay the loans. Accordingly, we affirm the district court's loss amount calculation.

Next, we find no merit in Cook's claim that the district court erred in imposing an obstruction of justice enhancement. An obstruction of justice enhancement is appropriate if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction. U.S.S.G. § 3C1.1. Application Note 4 provides a "non-exhaustive list of examples of the types of conduct to which this enhancement applies." Id., comment. (n.4). But, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness," and the Commentary instructs that the court should compare the conduct at hand to the conduct in the non-exhaustive lists in Application Notes

Four and Five to "assist the court in determining whether application of this enhancement is warranted in a particular case." U.S.S.G. § 3C1.1, comment. (n.3). In order for this enhancement to apply, the defendant must have consciously acted with the purpose of obstructing justice. United States v. Campa, 529 F.3d 980, 1016 (11th Cir. 2008), cert. denied, 129 S.Ct. 2790 (2009).

In this case, the district court did not clearly err in applying the obstruction of justice enhancement. While Cook's conduct does not fit squarely within any of the listed examples in Application Notes Four or Five (see U.S.S.G. § 3C1.1, comment. (nn.4, 5)), his conduct is more analogous to the examples where the obstruction enhancement does apply. For example, as the district court concluded, Cook's threat to file and filing of a malpractice suit was an attempt to intimidate his appointed attorney and caused her to file a motion to withdraw. Also, when considered with Cook's other actions, Cook's arguably frivolous malpractice suit was an attempt to delay his sentencing proceedings.

In addition to his malpractice suit, on the day of his scheduled sentencing hearing, Cook filed a petition for injunctive and declaratory relief against the district court, asking for an injunction and for the court to produce documents establishing subject matter, territorial, and personal jurisdiction. And, the day before his scheduled sentencing hearing, Cook filed a motion to withdraw his

6

guilty plea. Based upon Cook's disruptive behavior at counsel's motion to withdraw hearing, which required security officers to handcuff Cook and remove him from the courtroom, the court did not consider Cook's motion to withdraw his guilty plea at that hearing and had to conduct another hearing on that motion. Viewing Cook's actions together, Cook was consciously attempting to delay his sentencing proceedings, which he succeeded in doing. Accordingly, his actions justified the imposition of the two-level obstruction-of-justice enhancement.

Finally, we reject Cook's claim that the district court erred in calculating the restitution amount. The Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1227, codified at 18 U.S.C. § 3663A, requires district courts to order restitution in certain cases, including wire fraud. United States v. Dickerson, 370 F.3d 1330, 1335-36 (11th Cir. 2004). Section 3664 sets forth the procedures for ordering restitution and "demands that courts 'order restitution to each victim in the full amount of each victim's losses . . . .'" Id. at 1336 (quoting 18 U.S.C. § 3664(f)(1)(A)). The government bears the burden of demonstrating the amount of each victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

At Cook's sentencing, the government, through Digan's testimony, established that Cook had failed to repay $2,969,532.54 of the two loans, and Cook

presented no evidence that this calculation was incorrect. Accordingly, we affirm the district court's restitution order.

**AFFIRMED.**