[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11324
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:08-cr-00418-KOB-TMP-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GREGORY JOHN KATOPODIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 2, 2011)

Before EDMONDSON, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Gregory John Katopodis appeals his convictions and 46-month total sentence for mail and wire fraud, 18 U.S.C. §§ 1341, 1343, 1346. No reversible error has been shown; we affirm.

Katopodis helped found a charity called Computer Help for Kids ("CHK"). The charity's purpose was to collect and repair old computers and then to donate those computers to underprivileged children in Jefferson County, Alabama. CHK received funding from the Jefferson County Commission, the City of Birmingham, and other private businesses and persons. Katopodis served as CHK's leader and was the only person with access to CHK's financial records. The indictment alleged that Katopodis used CHK funds for his personal use.

On appeal, Katopodis argues that, in the light of the decision in Skilling v. United States, 130 S.Ct. 2896 (2010), he could not be convicted of honest services mail and wire fraud because the evidence showed that he did not commit honest services fraud under the narrowed definition of the offense outlined in Skilling. And because the jury returned a general verdict that did not indicate whether they found him guilty of traditional fraud or honest services fraud, Katopodis maintains that his convictions should be invalidated.

Because Katopodis did not object to the jury charge on honest services fraud in the district court, we review his claim for plain error. Puckett v. United

States, 129 S.Ct. 1423, 1428-33 (2009). Under this standard, Katopodis must show that there is (1) error, (2) that is clear or obvious, and (3) that affects his substantial rights. Id. at 1429.

In Skilling, the United States Supreme Court explained that a defendant can be convicted of honest services fraud under 18 U.S.C. § 1346 only if he has accepted bribes or kickbacks. 130 S.Ct. at 2931. In the light of this narrowed definition of honest services fraud, the district court, in the present case, erroneously instructed the jury because the court did not tell the jury that Katopodis had to accept bribes or kickbacks to be convicted of honest services fraud; so the first part of plain error is met.

And the second part of plain error -- that the error be plain under current law -- also is met. See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (for an error to be plain, it must be "clear under current law"). The narrowed definition of honest services fraud was not current law when Katopodis was tried, but "it is enough that an error be 'plain' at the time of appellate consideration." Johnson v. United States, 117 S.Ct. 1544, 1549 (1997).

About the third part of plain error, a defendant's substantial rights are affected if there is a reasonable probability of a different result. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005). Constitutional error occurs

3

when a jury is instructed on alternative theories of guilt and the jury returns a general verdict that may rest on a legally invalid theory. Skilling, 130 S.Ct. at 2934 (citing Yates v. United States, 77 S.Ct. 1064 (1957)). But incorrect jury instructions generally are not considered structural errors; and harmless error analysis applies to them. Hedgpeth v. Pulido, 129 S.Ct. 530, 532 (2008).

On appeal, Katopodis maintains that the government focused chiefly on honest services fraud and that, as a result, the jury could not have found him guilty of traditional fraud. But the government's evidence focused almost exclusively on Katopodis's scheme to defraud CHK and Jefferson County of money.[*]

Witnesses testified that Jefferson County donated money to CHK with the specific stipulation that the money be used only for CHK business. The evidence also established that Katopodis made false representations and promises repeatedly to Jefferson County to secure and maintain CHK's funding. Belying Katopodis's certifications to Jefferson County, trial evidence showed that Katopodis used the money for his own purposes including (1) using the CHK ATM card to make cash withdrawals and other purchases at casinos in Louisiana and Mississippi; (2) using CHK funds to pay off personal credit card bills; (3)

---

[*] Traditional mail or wire fraud involves a scheme or artifice "to obtain money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343.

4

buying airline tickets; and (4) buying personal items in other countries, including the Bahamas and Egypt. Witnesses also testified about Katopodis's spending habits, trips they had taken with him, things he had purchased for them, and Katopodis's reluctance to disclose CHK's financial records.

Given the overwhelming focus on Katopodis's fraudulent representations and improper spending of CHK funds, Katopodis's argument that the government's case mainly was about honest services fraud is unpersuasive. Katopodis has not shown a reasonable probability that, without the court's improper instruction about honest services fraud, he would not have been found guilty of traditional money or property fraud; instead, his claims are speculative. See Rodriguez, 398 F.3d at 1301 ("where the effect of an error on the result in the district court is uncertain or indeterminate . . . the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error").

Katopodis also argues that the district court abused its discretion when it did not allow a witness for Katopodis to testify as an expert. We have explained that "'[r]elief for violations of discovery rules lies within the discretion of the trial court; a defendant must show prejudice to his substantial rights to warrant reversal of that discretion.'" United States v. Petrie, 302 F.3d 1280, 1289 (11th Cir. 2002)

(citation omitted).

The district court abused no discretion in not allowing the witness to testify as an expert. Katopodis did not give the government the required pre-trial written notice about the nature of the witness's testimony. See Fed.R.Crim.P. 16(b)(1)(C) ("the defendant must, at the government's request, give to the government a written summary of any [expert] testimony that the defendant intends to use" describing the witness's opinions and qualifications). Instead, before trial, Katopodis sent the government an e-mail stating that the witness would testify about the government's financial charts and charts prepared by the witness himself. At trial, the witness testified about those very things. Katopodis has not identified the substance of the precluded testimony or how it could have impacted on the result at trial. He argues only that the government would not have been prejudiced by a short delay in the trial to allow him to give proper notice. So, Katopodis has failed to show how the district court's ruling prejudiced him.

We now address Katopodis's sentencing challenge. He argues that the district court erred in applying an obstruction of justice enhancement because his conduct was not motivated by a willfulness to obstruct justice. We review the district court's fact findings for clear error and the application of an obstruction of justice enhancement based on those facts de novo. United States v. Bradberry,

466 F.3d 1249, 1253 (11th Cir. 2006). Obstruction of justice occurs -- and a two-level enhancement applies -- when, among other things, a defendant threatens, intimidates, or otherwise unlawfully influences a witness directly or indirectly, or attempts to do so. U.S.S.G. § 3C1.1, comment. n. 4(a).

The evidence at the sentencing hearing showed that, Katopodis went to the house of a government witness (after both parties had rested but before closing arguments) allegedly to serve a subpoena. Although the witness was not at home, the witness's daughter was at home; and she testified that Katopodis yelled at her and told her she was lying when she said her mother was not home. In addition, Katopodis invaded the daughter's personal space and photographed her and the cars parked on the property. During this exchange, the witness was on the phone with her daughter and heard Katopodis yelling. On appeal, Katopodis concedes that he should not have gone to the witness's home. On these facts, we cannot say that Katopodis's purposeful acts did not constitute an attempt to intimidate a witness; and the district court did not clearly err in applying the enhancement. See United States v. Bradford, 277 F.3d 1311, 1315 (11th Cir. 2002) (a defendant's indirect threats made to a third party supported an obstruction of justice enhancement under section 3C1.1).

AFFIRMED.