[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11220
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cr-00428-JSM-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT CHRISTOPHER SUNMONU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 7, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Robert Sunmonu appeals his convictions for possession with intent to distribute a controlled substance, possession of a firearm during and in furtherance of a drug-trafficking crime, and possession of a firearm by a convicted felon. Sunmonu challenges the district court's admission of two pieces of evidence: (1) testimony that Sunmonu reached toward his pocket, which contained a loaded handgun, while police officers were apprehending him, and (2) testimony by one of the officers that, in his personal experience, drug dealers often carried firearms to facilitate their business. Sunmonu argues that these two pieces of evidence should have been excluded under Federal Rule of Evidence 403 because the unfair prejudice outweighed the evidence's probative value. We find that the district court did not abuse its discretion in admitting the evidence and affirm.

## I.    Background

### A. Factual Background

On August 29, 2019, officers from the St. Petersburg, Florida Police Department attempted to apprehend Sunmonu for driving a stolen vehicle, but Sunmonu fled before officers could approach the car to speak with him. Later, detectives located Sunmonu's car at an apartment complex.

When Detective Kaitlyn Larson arrived at the complex, she saw Sunmonu running away from Sergeant James Regula. As Sunmonu ran from Regula, he jumped over a wall and Larson saw him "reaching into his right pocket." Regula

2

followed Sunmonu over the wall and into the backyard of a house where he was able to catch him. At this point, Larson caught up and she and Regula forced Sunmonu, who was attempting to climb a fence to escape, onto the ground. During the struggle, Larson and Regula both repeatedly told Sunmonu to stop resisting but he did not comply. Once Larson and Regula got Sunmonu onto the ground, he had his hands concealed beneath his body, and he kept trying to reach toward his waist. It took Larson and Regula a few minutes to get control of Sunmonu's hands, and they had to physically overpower him to get him into custody and handcuffed. Once Sunmonu was handcuffed, Larson rolled him onto his side, noticed a bulge in his right pocket, searched it, and discovered a handgun.

After placing Sunmonu in a police cruiser, Larson retraced the steps of Sunmonu's flight and discovered a black zippered pouch containing marijuana, crack cocaine, and Xanax and a styrofoam cup containing crack cocaine and a razor blade.

After being read his *Miranda*[1] rights, Sunmonu told detectives that while he was running away from the officers, he saw the gun—that was found in his pocket—on the ground and he picked it up because he did not want any children to pick it up and potentially hurt themselves.

### B. Procedural History

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

A federal grand jury indicted Sunmonu with one count of knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); one count of knowingly carrying a firearm during and in relation to, and knowingly possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(i), 924(a)(2). Sunmonu proceeded to trial.

Before trial, the government filed a notice that it intended to introduce testimony that Sunmonu resisted arrest when the officers caught up with him, that during the struggle, Sunmonu "reached towards his waist," and that a subsequent search incident to arrest revealed a gun in his front pants pocket, which was the firearm at issue for the § 922(g) and § 924(c) counts.

After the parties stipulated to some of the facts,[2] Sunmonu filed a motion *in limine* to limit the government's introduction of evidence of his struggle during arrest. Sunmonu argued that because he had already admitted to law enforcement officers that he knew the firearm was in his possession, the testimony that he was reaching for the firearm in his pocket was unnecessary and would have a

---

[2] The parties stipulated to three facts: (1) prior to August 2, 2019, Sunmonu had been convicted in Florida of a felony offense, (2) Sunmonu knew that he had been previously convicted of a felony offense, and (3) the firearm and ammunition that Sunmonu possessed were manufactured outside of Florida, and therefore traveled in and affected interstate commerce.

prejudicial effect because "the clear inference is that [Sunmonu] was reaching for the gun in an attempt to murder the two officers." Sunmonu also argued that the government had indicated that Sergeant Regula would testify that drug dealers often carry firearms for intimidation purposes, and that such testimony should be excluded because it would be inadmissible as speculation and any probative value was outweighed by the danger of unfair prejudice.

The district court denied Sunmonu's motion *in limine*. The district court found that the evidence of Sunmonu reaching for the handgun was "relevant and part of the intrinsic facts of the case," and therefore admissible. The district court also held that Sergeant Regula could testify about the purposes for which drug dealers carried firearms if the testimony was drawn from the officer's personal experience. The district court cautioned the government not to make the testimony "a feature of the trial" and to keep it "short and sweet."

After Larson and Regula testified about the events surrounding Sunmonu's arrest, including the fact that Sunmonu reached for a handgun during his struggle with officers, Regula testified about his personal experience working drug cases. He testified that, in his seven years of experience investigating drug cases, "many" of the drug cases "involved dealers who possess guns on or near them" when he arrested them. Based on Regula's experience, drug dealers often carried firearms when they were in possession of drugs or drug sale proceeds to "protect what they

5

have." If a dealer was known to carry a gun, people were less likely to attempt to rob him. Regula also testified that drug dealers often used guns to intimidate. When the government asked Regula to provide examples of how drug dealers use guns to intimidate, Sunmonu objected and the district court sustained the objection. Regula continued his testimony, stating that, in his experience, drug dealers also use guns "[t]o try to attain a debt, repayment of a debt for a drug purchase" and usually keep their guns loaded and close at hand so they can reach them easily.

After testimony and closing arguments, the jury returned a verdict of guilty on all three counts of the indictment. Subsequently, the district court sentenced Sunmonu to 84 months' imprisonment with 5 years' supervised release. Sunmonu timely appealed.

## II.    Discussion

Sunmonu argues that the district court misapplied Fed. R. Evid. 403 and erred in allowing the government to present evidence (1) that he allegedly reached for a loaded firearm in his front pocket as he was being arrested and (2) that drug dealers occasionally use guns to collect debts and to intimidate others. He maintains that this evidence had no probative value, was unnecessary, and was unfairly prejudicial because it allowed the government to "tacitly argu[e] to the jury that [Sunmonu] had intended to inflict serious harm upon, or murder," the

6

officers who arrested him, and that it "speculatively painted [him] as a menace" who uses his gun to "threaten hapless drug users with death." We disagree.

We review a district court's rulings on the admissibility of evidence for abuse of discretion. *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992). When reviewing for an abuse of discretion, we will affirm even if we would have reached a different conclusion than the district court, so long as its ruling fell within a range of possible conclusions and did not involve a clear error of judgment or the application of an incorrect legal standard. *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at R. 403. We have explained that "in a criminal trial relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). Thus, the question implicated by Rule 403 is not whether evidence is prejudicial in and of itself, but whether the

7

danger of unfair prejudice substantially outweighs the evidence's probative value. *Fortenberry*, 971 F.2d at 721. Unfair prejudice to a criminal defendant means that the relevant evidence has the capacity to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

In the Rule 403 context, we "view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006) (per curiam). In balancing the interests of Rule 403, the district court should consider, among other things, the prosecutorial need for the evidence and the effectiveness of a limiting instruction. *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985) (quotation omitted).

The district court did not abuse its discretion in admitting evidence that Sunmonu reached for his front pocket, which contained a loaded firearm, during his arrest. To establish that Sunmonu had violated 18 U.S.C. § 924(c)(1), the government had to prove that he "used or carried a firearm, during and in relation to a drug trafficking crime." *United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005). To prove the "in relation to" element, the government had to prove that the handgun had "some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v.*

8

*United States*, 508 U.S. 223, 238 (1993). "The gun must at least facilitate, or have the potential of facilitating, the drug trafficking offense." *Id*.; *see also United States v. Timmons*, 283 F.3d 1246, 1250–51 (11th Cir. 2002).

Thus, the evidence that Sunmonu reached for the handgun in his pocket while the officers were arresting him is probative of the elements of 18 U.S.C. § 924(c)(1)(A)(i), as the government had to prove both that Sunmonu carried the weapon on his person or in his vehicle, *see Frye*, 402 F.3d at 1128, and that it had the potential to facilitate a drug-trafficking offense, *Smith*, 508 U.S. at 1250–51.

The evidence was also probative to establishing the knowing possession element of 18 U.S.C. § 922(g)(1), another of the charges against Sunmonu. *See United States v. Reed*, 941 F.3d 1018, 1020–21 (11th Cir. 2019) (citing *Rehaif v. United States*, 139 S.Ct. 2191, 2200 (2019) ("in a prosecution under 18 U.S.C. § 922(g) . . . the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."). Further, the evidence that Sunmonu reached for the gun did not cause him unfair prejudice because it was evidence that proved the charged offense rather than "lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the charged offense." *Old Chief*, 519 U.S. at 180.

9

Thus, the district court did not abuse its discretion in admitting the evidence that Sunmonu reached for the handgun.[3]

The district court also did not abuse its discretion in admitting Regula's testimony that drug dealers often carry loaded firearms for intimidation and protection. We have noted on numerous occasions that "there is a strong presumption that a defendant aware of [a] weapon's presence will think of using it if his illegal activities are threatened," *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013), and that guns are the "tool[s] of the drug trade," as there is a "frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (quotation omitted). Thus, the evidence was probative because it provided contextual evidence as to why Sunmonu likely possessed the firearm, which showed that the

---

[3] Sunmonu also argues that the district court should have excluded the evidence that he reached for the handgun because it had low evidentiary value, as there was never any doubt that he possessed the firearm. But a district court is not required to measure the amount of evidence necessary for a conviction and then to strictly limit the government's evidence to that amount. *Fortenberry*, 971 F.2d at 722. Here, the district court weighed the evidence's probative value and determined that Sunmonu reaching for the handgun was "relevant and part of the intrinsic facts of the case." That determination was not an abuse of discretion. *See United States v. Alfaro-Moncado*, 607 F.3d 720, 734 (11th Cir. 2010) (holding that it was not an abuse of discretion for a district court to admit five images of child pornography under Rule 403 when the parties had already stipulated that a video disc contained child pornography because the evidence's probative value was not substantially outweighed by any unfair prejudice to the defendant as it tended to show that there was child pornography on the disc and that the defendant knew he was in possession of child pornography); *see also Old Chief*, 519 U.S. at 186–87 ("[The] standard rule [is] that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.").

firearm was not there by chance and could potentially facilitate drug trafficking, a required element of 18 U.S.C. § 924(c)(1)(A)(i). *Cf. United States v. Rodriguez*, 765 F.2d 1546, 1561–62 (11th Cir. 1985) (admitting two firearms into evidence even without a showing of a direct connection to the charges because guns are often "tools of the trade" for drug dealers, and because the evidence thus had circumstantial relevance to defendant's intent on drug conspiracy count). Sunmonu has not established that this testimony was unfairly prejudicial to him.

Because the district court did not abuse its discretion in admitting the challenged evidence, we affirm Sunmonu's convictions and sentences.[4]

**AFFIRMED.**

---

[4] Sunmonu also argues that he is entitled to a new trial based on the cumulative effect of the district court's "misapplications of Fed. R. Evid. 403," because they indicate that he did not receive a fair trial. We review *de novo* whether cumulative errors have deprived the defendant of a fair trial. *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007) (per curiam). However, "[w]here there is no error or only a single error, there can be no cumulative error." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). Because Sunmonu has not established that the district court's admission of the evidence that he reached for the handgun in his pocket or that drug dealers often carry firearms was erroneous, there can be no cumulative error here. *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (per curiam) ("[B]ecause no individual errors underlying the district court's failure to dismiss the indictment have been demonstrated, no cumulative errors can exist.").