[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10991

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SYNDY ANAIA FELIX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20085-CMA-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRANCH, Circuit Judges.

PER CURIAM:

Syndy Felix appeals her convictions and sentences for one count of the use of unauthorized access devices, 18 U.S.C. §§ 2, 1029(a)(2), and three counts of aggravated identity theft, *id.* §§ 2, 1028A(a)(1). Felix argues that the district court erred by denying her motions for a mistrial and for a new trial because the prosecutor's misstatement during rebuttal closing argument was a deliberate comment on her constitutional right to silence. Felix also argues that her sentence of 64 months of imprisonment is procedurally and substantively unreasonable. We affirm.

Before trial, Felix stipulated to the fact that she owned a white Chrysler 200 and that she was the individual depicted in several photographs in the government's exhibits. During her opening statement, Felix stated that she had used debit cards that did not belong to her but disputed that she had the knowledge or intent to defraud.

At trial, the government presented testimony from Roger Kennedy, a senior field investigator at Regions Bank. Kennedy received a daily report from the debit-card-claims department and noticed that Regions debit cards belonging to individuals outside of southern Florida were being used in Miami-Dade and Broward Counties. Kennedy reviewed transaction records and surveillance

video for automated teller machines, which depicted a woman driving a white Chrysler 200 with an unobscured license plate that was registered to Felix. Kennedy identified Felix as the individual who had been using the stolen debit account numbers.

Kennedy estimated that, between February 2 and March 22, 2017, Felix was responsible for approximately 90 successful or unsuccessful debit card transactions at 12 machines involving 38 bank accounts. Kennedy determined that Felix was able to withdraw over $17,000 and was unsuccessful in her attempts to withdraw slightly less than $17,000. Kennedy noticed that Felix sometimes stood at teller machines for up to 15 minutes making multiple transactions with more than one debit card and personal identification number, and she did not attempt to hide her face or her license plate. Kennedy also noticed that Felix used the same debit account number multiple times in a single night by withdrawing $800, which was the daily withdrawal limit set by Regions Bank, before midnight and another $800 a few hours after midnight. Kennedy believed that another individual was involved because some photographs depicted a passenger in Felix's vehicle, but he could not determine the passenger's identity.

Felix testified in her defense and denied being a "thief." Felix stated that, from the end of January to the end of March 2017, she had a boyfriend named "Matthew," whom she called "Cashew." They met at a New Year's Eve party, and he took her on dates to nice restaurants and nightclubs and paid for everything, including bottles of liquor. Before they would go out, "Matthew" would ask

Felix to drive to a teller machine to obtain cash. He never drove because his license was suspended, but he sometimes accompanied her and stayed in the passenger's seat while Felix made the withdrawal. Felix explained that she was on the phone with "Matthew" during many of the transactions because she could not remember his personal identification number. Whenever the card he gave her did not work, "Matthew" would tell her that he gave her the wrong card or that there was not enough money in the account. All of the cards looked like Regions Bank cards, and she recalled glancing at one of the cards and seeing "Matthew" printed on it. Felix did not think that it was unusual for a person to have more than one card with a single bank. Felix did not cover her face or license plate because she was unaware that she was committing a crime until she was indicted three years later. Felix stated that her mistakes were "dating the wrong guy, trusting the wrong person."

On cross-examination, Felix stated that Matthew never told her his last name. Felix knew that Matthew lived in a house in Miramar, but she did not know if he lived alone. Felix believed that he was 25 years old and that he owned businesses, but the only business she knew about was a dirt bike repair business. Felix explained that he sometimes asked her to make multiple withdrawals in a single night because he had bills to pay in the morning. Felix stated that she broke up with Matthew because they grew apart.

During closing argument, defense counsel told the jury, "Don't just listen to what [] Felix said on the stand, but look at the

way she said it. . . . She answered every question and she answered honestly and she answered respectfully."

In rebuttal, the prosecutor stated that Felix "had deliberately closed her eyes to something that was very, very much apparent to her." The prosecutor also addressed Felix's testimony about her boyfriend:

> There is a man we hear about for the first time today named Matthew. Matthew doesn't have a last name, goes by Cashew, and he lives in a cul-de-sac in a house in Miramar. That's all we know about Matthew; quite literally, specifically that's all we know.

After Felix reserved a motion, the district court instructed the jury that "[a]nything the lawyers say is not evidence and is not binding on the [jury]." The district court also instructed the jury on deliberate avoidance of knowledge.

After the jury left to deliberate, Felix moved for a mistrial based on the prosecutor's statement that this was the first time that the government learned about "Matthew." Felix argued that the statement was an improper comment on her right to remain silent. Felix also submitted a statement from one of the government's potential witnesses that stated that Felix's new boyfriend "went by Peanut or Nut." Felix argued that, based on the statement, it was "obvious this person existed" and the prosecutor's misstatement "cast the entire [d]efense in doubt based upon a wrongful fact." The government responded that it was not clear that "Cashew" and

"Peanut," or "Nut," were the same person and argued that the rebuttal statement responded to the credibility of Felix's characterization of her boyfriend and did not dispute his existence.

The district court denied the motion for a mistrial but brought the jury back in and instructed, "[T]he [g]overnment made the statement, This is the first time we hear of a Matthew or a Cashew. You are to disregard that statement in its entirety. That statement is stricken." The jury convicted Felix on all counts.

Felix moved for a new trial. Felix argued, in relevant part, that the prosecutor's rebuttal statement was plainly erroneous and a violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). Felix argued that the prosecutor had used her post-arrest silence to impeach her exculpatory testimony about her boyfriend, despite having learned from a potential witness that Felix had dated someone called "Peanut" or "Nut" who flaunted money, jewelry, and nice cars.

The district court denied Felix's motion for a new trial. The district court ruled that no *Doyle* violation occurred because, at least as of two weeks before trial, the police had never interviewed Felix, and there was no occasion where Felix would have received a warning under *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court also ruled that any *Doyle* violation would have been harmless in the light of the overwhelming evidence of Felix's guilt and the curative instruction to the jury.

Felix's presentence investigation report provided a criminal history category of I, a base offense level of six, United States

Sentencing Guidelines Manual § 2B1.1(a)(2), a four-level enhancement because the loss was more than $15,000 but less than $40,000, *id.* § 2B1.1(b)(1)(C), and a two-level enhancement because the offense involved the production of counterfeit access devices, *id.* § 2B1.1(b)(11)(B)(i). The aggravated identity theft convictions carried a mandatory consecutive term of two years of imprisonment, which "may, in the discretion of the court, run concurrently, in whole or in part, only with another term of imprisonment" imposed on additional aggravated identity theft convictions. 18 U.S.C. § 1028A(a)(1), (b)(2), (b)(4); U.S.S.G. § 5G1.2(a), cmt. n.2(B).

The government objected that the report failed to include an enhancement for obstruction of justice, U.S.S.G. § 3C1.1. The government argued that Felix could have testified without resorting to misrepresentations of fact, but instead, she testified that she carried out 90 transactions at over 10 locations with over 30 different debit cards, each with a different personal identification number, all while believing that each of the cards and the cash belonged to her boyfriend.

The district court sustained the objection and found that Felix's "testimony was frankly incredible" and "remarkable." With the obstruction enhancement, Felix's guideline range sentence became 15 to 21 months of imprisonment and a consecutive 24 months of imprisonment on the three counts of aggravated identity theft, to run consecutively or concurrently.

The district court heard Felix's allocution, in which she stated that she was naïve but had been reformed. In addressing the

sentencing factors, 18 U.S.C. § 3553(a), the district court stated that "[t]here was no reason for [Felix] to get involved in this except greed and the lack of respect for others" and that the surveillance videos of Felix showed that she was "doing it without any remorse, without any concern for what impact this would have on others." The district court stated that the nature of the offense was serious because "identity theft is a plague" and stated that the sentence should promote respect for the law and deter Felix and others.

The district court sentenced Felix to 16 months of imprisonment followed by two consecutive terms of 24 months of imprisonment and a concurrent term of 24 months of imprisonment, for a total sentence of 64 months of imprisonment. The district court also ordered Felix to pay $17,160 in restitution and a $7,500 fine.

Felix challenges the denial of her motions for a mistrial and a new trial, which we review for an abuse of discretion. *United States v. Reeves*, 742 F.3d 487, 504 (11th Cir. 2014).

Felix argues that the prosecutor made a deliberate misstatement of fact in her rebuttal closing argument, but we disagree. Prosecutorial misconduct during closing argument warrants a new trial only when the remarks were improper and prejudiced the defendant's substantial rights. *Id.* at 505. Viewing the comments in the context of the trial as a whole, we consider "(1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the

competent proof establishing the guilt of the defendant." *Id.* A prosecutor may draw conclusions from the evidence and, "as an advocate, is entitled to make a fair response to the arguments of defense counsel." *Id.* If the district court issued a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable. *See id.* at 506.

The prosecutor's statement did not affect Felix's substantial rights because there is no reasonable probability that, but for the statement, the outcome would have been different. Felix presented no evidence that the government was aware of a "Matthew" before she testified. And even if the government suspected during Felix's testimony that "Cashew" could be the same person who its potential witness called "Peanut" or "Nut," that suspicion alone did not render the prosecutor's statement a deliberate falsehood. Further, viewed in the context of the entire trial, this isolated statement did not undermine Felix's testimony that another person was involved. Indeed, Kennedy testified that, based on his investigation, he believed that another individual was involved in the scheme. And many of the government's exhibits depicted either a passenger in Felix's vehicle or Felix with her cell phone to her ear when she was making the withdrawals.

The evidence of Felix's guilt was overwhelming too. In less than two months, Felix made or attempted to make over 90 cash withdrawals totaling $33,960 using 38 stolen debit account numbers, each of which required a different personal identification number. Surveillance video captured Felix and her vehicle at the

teller machines, and her face was visible in over two dozen of the government's photographic exhibits. By stipulating to the conduct, Felix placed her intent and knowledge, and the credibility of her testimony, squarely at issue. But her story that she did not know any reasonable information about the boyfriend for whom she was making a significant number of cash withdrawals in a short period was not believable. And we also "presume that the jury followed the district court's curative instruction[]." *See United States v. Valois*, 915 F.3d 717, 726 (11th Cir. 2019); *Reeves*, 742 F.3d at 506.

Felix erroneously argues that the prosecutor's rebuttal statement was a comment on Felix's right to silence. *Doyle* held that the use of a defendant's post-arrest, post-*Miranda* silence for impeachment purposes violates due process. 426 U.S. at 619. But a defendant's post-arrest, pre-*Miranda* silence is admissible for impeachment purposes because such silence may be probative "and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty." *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993). And we "permit the prosecution to use a defendant's post-arrest, pre-*Miranda* silence as direct evidence that may tend to prove the guilt of the defendant." *United States v. Wilchcombe*, 838 F.3d 1179, 1190 (11th Cir. 2016). Because Felix does not dispute that she never received a *Miranda* warning, her argument is foreclosed by precedent. *Brecht*, 507 U.S. at 628; *Wilchcombe*, 838 F.3d at 1190.

Felix argues that the district court procedurally erred by failing to make an independent factual finding to support the

enhancement for obstruction of justice, U.S.S.G. § 3C1.1. We disagree. We review factual findings regarding an obstruction of justice enhancement for clear error and the application of law to those facts *de novo. United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006). The Guidelines provide a two-level enhancement for a "defendant [who] willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense," U.S.S.G. § 3C1.1, which includes attempting to evade conviction by perjury, *see id.* § 3C1.1 cmt. n.4(b). "[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). But "a remand is not necessary when the record clearly reflects the basis for [an] enhancement and supports it." *United States v. Feldman*, 931 F.3d 1245, 1263 (11th Cir. 2019) (alteration in original) (internal quotation marks omitted).

The determination by the district court that Felix gave false testimony was supported by the record and was not clearly erroneous. The district court ruled that Felix's testimony that she had no knowledge of the criminal nature of her conduct was "frankly incredible" and "remarkable." In denying Felix's motion for a new trial, the district court explained that the government presented overwhelming evidence "showing [Felix's] knowledge—or deliberate avoidance of knowledge—that she was making unauthorized cash withdrawals" and that Felix attempted to shift the blame but "was discredited when she could not answer the most basic

questions about her purported ex-boyfriend." Although Felix complains that these findings were not specific enough, she failed to request more particular findings, so she cannot complain that the district court erred by failing to make them. *See United States v. Hubert*, 138 F.3d 912, 915 (11th Cir. 1998).

Felix challenges the substantive reasonableness of her sentence, which we review for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors." *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021).

The district court reasonably determined, after stating that it carefully considered all of the sentencing factors, that a total sentence of 64 months of imprisonment accounted for Felix's "serious" offense conduct and provided adequate deterrence to her and to others. The selection of a sentence less than the statutory maximum of ten years on the first count alone and within Felix's guideline range also suggests that the sentence is reasonable. *See United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). Felix argues that the district court failed to meaningfully consider her personal history, but the district court heard her allocution and was "not required to explicitly address each of the § 3553(a) factors or all of the mitigating evidence." *Taylor*, 997 F.3d at 1354.

22-10991               Opinion of the Court                13

We **AFFIRM** Felix's convictions and sentence.