[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10742
Non-Argument Calendar

_____

D.C. Docket No. 4:19-cr-00046-WMR-WEJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 21, 2021)

Before JILL PRYOR, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

James Taylor appeals the imposition of an electronic search condition on his conditions of supervised release and the substantive reasonableness of his above-guideline 30-month sentence for being a felon in possession of a firearm. Taylor argues that the District Court below erred in two ways. First, Taylor claims that the District Court erred by imposing an electronic search condition on his supervised release conditions as a measure to deter him from future offenses. Then, Taylor argues that the District Court substantively erred by placing too much emphasis on his criminal history in imposing an above-guideline sentence. We disagree on both points and, accordingly, affirm.

I.

At 2:49 AM on February 23, 2019, officers from the Dalton Police Department were dispatched to check on the welfare of a non-responsive subject—a man later identified as James Taylor. Dispatch advised the officers that Taylor—seated in a truck in the middle of a road—did not respond to a motorist, who had honked his horn at Taylor's grey Chevrolet Avalanche but ultimately had to drive around the stopped truck.

When the first officer arrived at the scene, he observed a grey truck sitting in the middle of the road. The officer walked around to the passenger's side of the

truck and knocked on the window to get Taylor's attention. Taylor did not respond to the knock, but the officer could see Taylor's chest moving up and down, so he assumed that Taylor was alive. The officer then approached the driver's side of the truck and knocked on the window. Again, Taylor did not respond, so the officer opened the driver's side door and identified himself as a police officer.

This was apparently enough to rouse Taylor. As the police officer opened the driver's side door to the truck, Taylor awoke, appeared startled, and asked the officer what he was doing. The officer asked Taylor if he was okay; Taylor stated that he was but that he was confused as to why the police officer was standing beside his truck. At this point, the officer noticed that Taylor was slurring his speech and seemed nervous, but the officer did not smell any alcohol, nor did he see any indication that Taylor was intoxicated. So, the officer explained to Taylor that he was parked in the middle of the road and that another driver had honked, waiting for him to move.

When the officer ran a record check, he learned that Taylor had an active warrant from Walker County, Georgia, and that Taylor did not have a driver's license. The officer advised Taylor that he was under arrest for Driving While Unlicensed. When the officer began to handcuff Taylor, Taylor stated that he had a knife in his right-side front pocket. As the officer retrieved the knife from Taylor's pocket, a second officer—who recently arrived on the scene—observed

3

that Taylor also had a firearm in his waistband.  The firearm, a 9mm pistol, was then run through dispatch, but it came back without a record.  An officer also ran a criminal history check on Taylor and found that he was convicted felon.  As a result, Taylor was not permitted to possess a firearm, and the officers transported him to the Whitfield County Jail.

On August 28, 2019, a grand jury indicted Taylor for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Taylor pled guilty without a plea agreement on November 4, 2019.  In Taylor's PSI, the probation officer calculated that Taylor's base offense level was 14 under U.S.S.G. § 2K2.1(a)(6)(A), but the officer applied a two-level reduction for acceptance of responsibility under § 3E1.1(a).  The probation officer ultimately determined that, based on an offense level of 12 and a criminal history category of IV, Taylor's guideline range was 21 to 27 months.

Taylor filed a sentencing memorandum in which he stated that he struggled with sobriety and that his poor judgment was directly tied to his substance abuse.  He noted, however, that he had been sober since his February 2019 arrest and that he was in enrolled in a theology correspondence course, as he hoped to join a ministry upon his release from prison.

The government also submitted a sentencing memorandum and argued that Taylor's criminal history weighed heavily in favor of a 42-month sentence.  In

support, the government noted that Taylor habitually possessed guns when he was not permitted to and that Taylor's previous stints in custody had not deterred him from having a gun, despite his convicted felon status. The 42-month sentence, then, was necessary to deter Taylor from future prohibited conduct.

In response to the government's memorandum, Taylor acknowledged that he had been convicted for possessing a firearm six times in the last decade. Taylor likewise conceded that the District Court previously warned him that he would be facing substantially more time for this offense than he did for past offenses. But, in response to the government's proposed above-guidelines sentence, Taylor argued that he had received only probation for his prior offenses, so a within-guidelines sentence of imprisonment would already be substantially more than he previously received. Taylor additionally pointed out that, during the past decade, he had no convictions, and his firearm possession in this case was not in furtherance of committing other felony offenses but was in connection with the use of drugs or alcohol. As a result, Taylor argued that drug treatment would serve as a deterrent, and a within-guidelines sentence—when compared to his prior sentences—would be sufficient to achieve respect for the law.

At sentencing, the government maintained that a sentence of 42 months' imprisonment would be reasonable and sufficient to achieve the goals detailed in 18 U.S.C. § 3553(a). It argued that Taylor had shown disregard for the law, that a

5

significant custodial sentence would send a strong message, and that such a sentence would hopefully deter him in the future. And the government noted that, in any event, a 42-month sentence was far below the maximum allowed by statute. In response, Taylor argued that the best deterrent for future offenses would be a drug treatment program in prison. And he reiterated that a within-guidelines sentence would be significantly more time than he received in the past. Indeed, Taylor had already spent one year in county jail, which was more time than he had served for any previous offense.

The District Court declined to impose the 42-month sentence the government suggested and instead sentenced Taylor to 30 months' imprisonment and three years of supervised release. The District Court stated that it intentionally chose a sentence three months beyond the upper end of the guideline range to send a message to Taylor about the seriousness of the offense and to promote respect for the requirement that Taylor cannot carry a weapon. And for the supervised release, the District Court ordered Taylor to submit his personal property, residence, car, documents, computers, digital and data storage devices, and office to search by the probation officer. The search condition required that any search pursuant to this condition was authorized "only when reasonable suspicion exists that [Taylor] violated a condition of [his] supervision and that areas to be searched contain evidence of this violation."

6

Taylor objected to the upward variance as substantively unreasonable and to the search condition regarding computers and electronic equipment as overbroad. Noting Taylor's objection to the search condition, the District Court explained that since Taylor had a drug history, the electronic search condition was reasonable because evidence of drug activity could be reflected on his digital devices. Likewise, the District Court stated that it was reasonable to assume that, given Taylor's history, his devices might reflect a purchase or attempt to purchase a weapon "through Craigslist or otherwise."

Taylor timely appealed and argues (1) that the electronic search condition was unrelated to the goals of deterrence, public protection, or rehabilitation and (2) that his above-guidelines 30-month sentence is substantively unreasonable. We disagree on both counts and, accordingly, affirm the imposition of the electronic search condition and the 30-month sentence.

## II.

We review the imposition of special conditions of supervised release for abuse of discretion. *United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009). We likewise review the reasonableness of a sentence under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). The party challenging a sentence bears the burden of demonstrating that the sentence is unreasonable in light of the record, the factors listed in 18 U.S.C.

§ 3553(a), and the substantial deference afforded sentencing courts. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

III.

Let's start with Taylor's electronic search condition.

As a general matter, a district court may order special conditions that: (1) are reasonably related to the nature and circumstances of the offense, history and characteristics of the defendant, and the needs for adequate deterrence, to protect the public, and to provide the defendant with needed training, medical care, or correctional treatment in an effective manner; (2) involve no greater deprivation of liberty than is reasonably necessary; and (3) are consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d)(1)–(3); *see also* U.S.S.G. § 5D1.3(b). When imposing special conditions, a district court must consider what conditions best accomplish the purposes of sentencing. *Moran*, 573 F.3d at 1139.

Further, supervised release conditions that are undeniably related to 18 U.S.C. § 3553(a) sentencing factors are not vague and overbroad, *United States v. Nash*, 438 F.3d 1302, 1307 (11th Cir. 2006), though a special condition does not need to be supported by each of the § 3553(a) factors. *United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003). Nor does a special condition of supervised release need to relate to the particular offense of conviction. *United States v. Bull*,

8

214 F.3d 1275, 1277 (11th Cir. 2000). And although a condition of supervised release should not unduly restrict a defendant's liberty, a condition is not invalid simply because it limits the defendant's ability to exercise constitutionally protected rights. *United States v. Tome*, 611 F.3d 1371, 1376 (11th Cir. 2010). This makes sense: the goals of reducing recidivism and promoting rehabilitation warrant privacy intrusions that would not otherwise be allowed under the Fourth Amendment. *Castillo v. United States*, 816 F.3d 1300, 1305 (11th Cir. 2016).

At this point, we should note that electronic search conditions are typically reserved for sex offenders. But, as a matter of first impression in this Circuit, we hold that electronic search conditions may also be imposed on those who are not normal non-sex offenders, such as those who frequently recidivate, or habitually violate their conditions of supervised release, in a manner that poses a danger to others. This is consistent with the Sentencing Guidelines, which recognize that a special condition of supervised release requiring the defendant to submit to a search at any time of his person and property, including electronic devices, where law enforcement or the probation officer have reasonable suspicion of a violation of supervised release or unlawful conduct, is recommended in sex-offender cases and "may otherwise be appropriate *in particular cases*." U.S.S.G. § 5D1.3(d), (d)(7) (emphasis added).

9

With these principles in mind, it is clear that Taylor has failed to show that the District Court abused its discretion by imposing the electronic search condition as a special condition of his supervised release. Although the electronic search condition did not relate directly to Taylor's firearm offense, it was reasonably related to Taylor's history as a recidivist and the statutory goals of deterring him from future potentially dangerous offenses. 18 U.S.C. § 3583(d)(1)–(3); *Moran*, 573 F.3d at 1139–41 (upholding a release condition unrelated to the defendant's instant offense, but where the condition specifically related to the defendant's prior convictions).

Further, Taylor was not a "normal non-sex offender." Indeed, Taylor has conceded that he was a chronic lawbreaker. The District Court recognized this fact and repeatedly noted its concern that Taylor would continue to purchase and possess both drugs and guns. From there, it was entirely reasonable for the District Court to conclude that Taylor may purchase those drugs and guns over the internet. A mere search of a physical space—as the District Court pointed out—would be far less likely to reveal such violations. So, even though Taylor was not a sex offender, it was not an abuse of discretion for the District Court to impose an electronic search condition here.

Lastly, Taylor argues that the electronic search condition was vague and overbroad because it allowed "unfettered access to content across any number of

devices" and because the phrase "areas to be searched" was ambiguous. But we can dispose of these arguments quickly. First, the electronic search condition was not overbroad because it allowed access only at a reasonable time, when there was reasonable suspicion of a violation, and where the specific area to be searched contained evidence of that violation. And second, the phrase "areas to be searched" was not vague because the specific areas to be searched were enumerated in the search condition, and the commonsense meaning of the phrase—especially as it referred back to a list of enumerated areas—was plain. In fact, the search condition here was clear that it authorized a search of only the area thought to contain the violation.

Accordingly, the District Court did not abuse its discretion by imposing the electronic search condition on Taylor's conditions of supervised release, and thus we affirm its imposition.

## IV.

Now, to the substantive reasonableness of Taylor's sentence.

A district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), which include reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public from the defendant's further crimes, and providing the defendant with

appropriate correctional treatment. 18 U.S.C. § 3553(a). A district court must also take into consideration the "nature and circumstances" of the offense and the "history and characteristics" of the defendant. *Id.* § 3553(a)(1). In addition, the statute directs the district court to consider the types of sentences available, the applicable guideline range, any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(3)–(7).

The weight accorded to any one § 3553(a) factor is a matter "committed to the sound discretion of the district court," and a court may attach "great weight" to one factor over others. *Rosales-Bruno*, 789 F.3d at 1254 (quotation marks omitted). However, a district court's unjustified reliance on a single § 3553(a) factor may be a "symptom" of unreasonableness. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). The district court is not required to explicitly address each of the § 3553(a) factors or all of the mitigating evidence. *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Rather, "[a]n acknowledgment [that] the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight,

12

(2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Rosales-Bruno*, 789 F.3d at 1256 (quotation marks omitted).  We may vacate the sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" by imposing a sentence that falls outside the range of reasonableness as dictated by the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

In reviewing the substantive reasonableness of a sentence imposed outside the guideline range, we may take the degree of variance into account and consider the extent of a deviation from the guidelines.  *Gall*, 552 U.S. at 47, 128 S. Ct. at 594–95.  Although there is no proportionality principle in sentencing, a major variance from the advisory guideline range requires a more significant justification than a minor one, and the justification must be sufficiently compelling to support the degree of the variance.  *Irey*, 612 F.3d at 1196.  The district court may vary upward based on conduct that was already considered in calculating the guideline range.  *United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008).  Finally, a sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence.  *Gonzalez*, 550 F.3d at 1324.

Here, the District Court did not substantively err in varying upward by three months. In weighing the § 3553(a) factors to formulate a sentence, the District Court declined to impose the government's requested 42-month sentence but instead found that a sentence of 30 months was sufficient and not greater than necessary to meet the goals of the § 3553(a) factors. The District Court quite reasonably placed heavy emphasis on a few of the § 3553(a) factors: the nature and circumstances of the offense in light of Taylor's prior criminal history, promoting respect for the law, and deterring Taylor from continued violations of the prohibition against him possessing a gun. We find the District Court's deterrence rationale particularly compelling. This was Taylor's *seventh* conviction for illegally possessing a gun, and Taylor received little to no jail time for his previous offenses. It was hardly an abuse of discretion, then, for the District Court to conclude that Taylor had not been deterred from violating the law by his prior punishments.

And the sentence Taylor received—30 months' imprisonment—was significantly less that the statutory maximum sentence—10 years' imprisonment. Again, this is an indicator of the sentence's reasonableness. *Gonzalez*, 550 F.3d at 1324. So, given the District Court's consideration of the § 3553(a) factors, and given that Taylor's sentence falls well below the statutory maximum, we hold that

14

the District Court's imposition of a 30-month sentence was not an abuse of discretion.

V.

Because the District Court did not abuse its discretion in imposing on Taylor (1) an electronic search condition on his conditions of supervised release and (2) a sentence of 30 months' imprisonment, we affirm.

**AFFIRMED.**