[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13646

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARK ANTHONY LINCOLN,
a.k.a. Johnson Harper,
a.k.a. Kirk Johnson,
a.k.a. Kirk Lincoln,
a.k.a. Quinton Harper,
a.k.a. Ben Lewis,
a.k.a. Christopher Jacob,
a.k.a. Kirk Williams,
a.k.a. Christopher Jenkins,

2                    Opinion of the Court                    22-13646

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cr-00331-SDG-1

_____

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Mark Lincoln appeals his 36-month sentence of imprisonment imposed upon revocation of his supervised release. He contends that the district court imposed an illegal and uncertain sentence by ordering his federal sentence to run consecutively to anticipated state sentences on related state charges. He also maintains that the sentence is substantively unreasonable because, in his view, the court refused to consider the mitigating circumstances of his possession and use of a firearm while on supervised release. After careful review, we affirm the district court.

**I.**

Lincoln began a ten-year term of supervised release in 2018, after serving a 200-month prison sentence for a federal drug crime. More than four years later, in 2022, a probation officer petitioned to revoke Lincoln's supervised release, alleging two violations of its conditions stemming from an incident on January 3, 2021: (1)

22-13646                Opinion of the Court                3

Lincoln had committed the new state-law felony offenses of aggravated battery, aggravated assault, possession of a firearm by a felon, and possession of a firearm during the commission of a felony; and (2) he had possessed a firearm.

The district court held a revocation hearing in October 2022, while the state charges were pending. At the outset of the hearing, Lincoln stipulated that the government could prove by a preponderance of the evidence that he unlawfully possessed a firearm as alleged in violations 1 and 2. In exchange, the government agreed not to proceed on the remaining state-law crimes alleged in violation 1. Based on that agreement, the district court determined a guideline range of 21 to 27 months. The government sought the statutory maximum revocation sentence of 60 months. Lincoln requested 18 months.

During its argument, the government proffered the facts of the underlying incident on January 3, 2021, and also showed a video clip of that incident. On that night, according to the government, Lincoln and his security-guard company, which he started after his release, were providing security at an Ethiopian restaurant and hookah bar in DeKalb County, Georgia. An early-morning dispute over checks inside the hookah bar became a chaotic scene in the parking lot outside. While Lincoln and three armed employees were in the parking lot, an intoxicated patron approached Lincoln and took a swing at him. In response, Lincoln withdrew a handgun and shot the patron in the head. Lincoln then fled the scene and eventually the state.

Lincoln did not meaningfully dispute the government's proffer, instead arguing that it was "minimally relevant to the conduct that Mr. Lincoln is being charged with," which was possession of a firearm. Defense counsel also offered additional context about the incident. She stated that a large group of patrons who were drunk and aggressive had caused the dispute, and that Lincoln had acted in self-defense by shooting a member of the group who attempted to attack him. She added that Lincoln had confiscated the gun from the rowdy group earlier that same evening. Finally, counsel cited as mitigating evidence Lincoln's decision to open a business and to provide opportunities and support for other formerly incarcerated individuals.

Ultimately, the district court sentenced Lincoln to 36 months of imprisonment, followed by five years of supervised release, consecutive to any sentence imposed in the DeKalb County case. The court explained its view that a modest upward variance from the guideline range was appropriate, describing the case as "one of the most serious examples of a felon-in-possession violation that you can imagine given the circumstances that someone was, in fact, shot in the head and luckily, fortunately for you, Mr. Lincoln, managed to survive."

The district court stressed that the "sentence [was] in no way a reflection of the circumstances that led to the shooting"— namely, whether the shooting was in self-defense. In fact, the court said that it had "no view about that" issue, which would "be resolved in [Lincoln's] DeKalb case."

Still, though, the district court acknowledged the potential "mitigating circumstances as to [Lincoln's] reason for using the firearm," but it emphasized the "fairly undisputed facts" that "he did use a firearm" and then "fled the scene." Whether the shooting was justified or not, the court told Lincoln, "you were a convicted felon and knew that you were not authorized to possess a firearm and placed yourself in that position and then had the depravity to leave the scene and to leave a man lying, probably for dead," which "show[ed] a degree of selfishness and self-preservation that is extremely aggravating." While the court commended Lincoln on "what otherwise would have been an incredible success story for you" since his release from prison, it stressed he should never have possessed a gun "in that situation to begin with."

Again, the district court stated that it was "making no finding as to the remaining charges that are pending in DeKalb County, specifically with respect to aggravated battery, aggravated assault, or the possession of a firearm during the commission of a felony," which would be resolved by DeKalb County. The 36-month sentence, according to the court, was "narrowly tailored for the supervised release violations themselves and the aggravating circumstances" cited. The court ordered the sentence to run consecutively to any sentence imposed in the DeKalb County case. Lincoln objected to the length of the sentence and the court's decision to run the sentence consecutively to the anticipated state sentences. This appeal followed.

## II.

Lincoln first argues that his consecutive sentence is "illegal and uncertain" because he was in "primary federal custody on the day he was revoked" and is "set to serve his federal sentence before any state sentence." Since his federal sentence cannot logically come after any state sentence, he reasons, the district court exceeded its authority by attempting either to order him to serve his state sentence first or to prevent him from receiving credit in state court for his federal sentence. In either case, Lincoln asserts, "[a] federal court cannot dictate whether someone will serve more or less time in state custody by declaring that a sentence will run consecutive to an anticipated state sentence." Lincoln also asserts generally that uncertainty about the effect of the consecutive nature of the sentence "risks serious misapprehensions by the Bureau of Prisons."

We review *de novo* questions about the district court's authority to impose consecutive rather than concurrent sentences. *United States v. Ballard*, 6 F.3d 1502, 1505 (11th Cir. 1993). Because we conclude that Lincoln has not established an error with regard to the consecutive nature of his sentence, we need not address the government's contention that plain-error review applies.

Under binding precedent, a sentencing court has the authority to impose a consecutive federal sentence when, as here, the court "anticipates a state sentence that has not yet been imposed." *Setser v. United States*, 566 U.S. 231, 236 (2012); *see also United States v. Andrews*, 330 F.3d 1305, 1307 (11th Cir. 2003); *United States v.*

*Ballard*, 6 F.3d 1502, 1510 (11th Cir. 1993). Nothing in that precedent supports Lincoln's proposed carve-out for defendants in his position in "primary federal custody."

In fact, the Court in *Setser* noted the possibility that a defendant who receives a federal sentence consecutive to an anticipated state sentence may "serve[] his federal sentence first." 566 U.S. at 241. In that scenario, according to the Court, principles of dual sovereignty permit the state court to "decide whether to give him credit against his state sentences without being bound by what the district court . . . said on the matter." *Id.* Even if the state court imposes a sentence contrary to the intent of the federal district court, that does not render the consecutive federal sentence unlawful. *Id.* at 244 ("That a sentence is thwarted does not mean that it was unreasonable."). A sentence is not unreasonable simply because it is "difficult, or even impossible, to implement." *Id.*

This Court made similar observations in *Andrews*. We recognized that the federal court "may control the federal sentence," but *not* "how a state court sentences a defendant." 330 F.3d at 1307 n.1. We elaborated on this point as follows:

> The fact that the federal district court elected to sentence Andrews to a consecutive federal sentence by no means limits the sentencing options available to the state court. For example, the state sentencing judge is free to disregard the intent of the federal sentence and make the state sentence concurrent with the federal sentence. If the state judge so elects, all

the State of Florida needs to do is designate the federal prison where Andrews is incarcerated as the "official detention facility" in which Andrews will serve his concurrent state sentence. Such a decision by the state judge does not affect the actual time served on the federal sentence, but gives state credit on the state sentence for the time served in the federal detention facility.

The state judge is also free, however, to recognize the intent of the federal sentence is for the defendant to serve separate time for both his state and federal charges. If the judge so elects, the state judge may sentence Andrews to a consecutive state sentence to be served *once Andrews is released from federal custody*.

*Id* (emphasis added). Thus, *Andrews,* like *Setser*, contemplates that a defendant will "serve[] his federal sentence first," 566 U.S. at 241, the same situation we have here. We see no reason to conclude that the court's authority to impose a consecutive sentence depends on the order in which a defendant serves or is likely to serve the respective sentences. *See Ballard*, 6 F.3d at 1509 ("Which court sentences first is irrelevant.").

Here, the district court had the authority to impose a federal sentence consecutively to Lincoln's anticipated state sentences. *See Setser*, 566 U.S. at 244; *Andrews*, 330 F.3d at 1307 n.1. To the extent that, in doing so, the court intended to control the anticipated state

sentences, the state sentencing court is not "bound by what the district court . . . said on the matter," *Setser*, 566 U.S. at 241, and is free to "make the state sentence concurrent with the federal sentence," *Andrews*, 330 F.3d at 1307 n.1. Or "the state judge may sentence [Lincoln] to a consecutive state sentence to be served once [he] is released from federal custody." *Id.* The inherent uncertainty in this scenario does not establish that the consecutive nature of the federal sentence is unlawful or unreasonable.[1] *See Setser*, 566 U.S. at 243–44. If an issue later arises regarding the implementation of Lincoln's federal sentence, he may seek relief from the Bureau of Prisons, "[a]nd if that does not work, he may seek a writ of habeas corpus" under 28 U.S.C. § 2241. *Id.* at 244.

## III.

Lincoln also maintains that his 36-month sentence is substantively unreasonable. We review the reasonableness of a sentence for an abuse of discretion. *United States v. Rodriguez*, 34 F.4th 961, 969 (11th Cir. 2022). As the challenger, Lincoln "must shoulder the burden of demonstrating that the sentence is unreasonable, considering the complete record, the § 3553(a) factors, and the substantial deference we give sentencing courts." *United States v. Osorto*, 995 F.3d 801, 822 (11th Cir. 2021).

---

[1] We summarily reject Lincoln's unsupported claim that the district court relied on the clearly erroneous belief that he would serve his state sentence first. Assuming Lincoln serves his federal sentence first, the district court's imposition of a consecutive sentence is not superfluous or irrational, as Lincoln suggests, even if is more in the nature of a recommendation to the state court.

District courts are authorized to "revoke a term of supervised release" and impose a prison sentence when a defendant violates a condition of supervised release. 18 U.S.C. § 3583(e)(3). A sentence imposed upon revocation must be "sufficient, but not greater than necessary," to comply with the sentencing goals of deterrence, protection of the public, and rehabilitation of the defendant. *See* 18 U.S.C. § 3583(c) (requiring district courts to "consider[] the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)"). The court must also consider the nature and circumstances of the violation, the history and characteristics of the defendant, the sentencing guidelines, and the need to provide restitution, among other factors. *See id.* But the court is "not required to explicitly address each of the § 3553(a) factors or all of the mitigating evidence." *United States v. Taylor*, 997 F.3d 1348, 1354 (11th Cir. 2021).

"The weight accorded to any one § 3553(a) factor is a matter committed to the sound discretion of the district court, and a court may attach great weight to one factor over others." *Id.* Still, the court abuses it discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

If the district court imposes a sentence outside the guideline range, it must ensure that the justification is "sufficiently compelling to support the degree of the variance." *Gall v. United States*,

552 U.S. 38, 50 (2007). In conducting our review, we consider the totality of the circumstances, including any variance from the guideline range. *Id.* at 51. But we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* That we might conclude that a "different sentence was appropriate is insufficient to justify reversal." *Id.*

Lincoln claims that the district court abused its discretion by refusing to consider the entirety of his conduct in determining a reasonable sentence. In his view, the court's reasoning excluded relevant mitigating factors that were due significant weight, specifically "the mitigating circumstances leading up to the shooting."[2]

Here, Lincoln has not shown that the district court abused its considerable sentencing discretion and imposed a substantively unreasonable revocation sentence. As we see it, the court relied on two "aggravating circumstances" about Lincoln's conduct in imposing the upward variance: (1) his knowing possession of a gun in a security-guard role, which made his use of that gun more likely;

---

[2] According to Lincoln, those circumstances included that "Mr. Lincoln confiscated the gun from a suspected gang member; that a fight broke involving and drunk, angry patrons who Mr. Lincoln believed to be gang members; that those patrons were surrounding Mr. Lincoln and his team; that those patrons were running back and forth to their cars; whether Mr. Lincoln believed some of the patrons had weapons; that [the patron assailant] was particularly agitated and aggressive; whether Mr. Lincoln believed [the assailant] had a weapon; and that, in the midst of all the chaos and emotion, [the assailant] suddenly reached up and punched Mr. Lincoln in the face."

and then (2) upon using the gun to shoot another person, whether in self-defense or not, fleeing the scene and leaving the man "probably for dead," which "show[ed] a degree of selfishness and self-preservation that is extremely aggravating."

Lincoln does not dispute that, in sentencing him for violating the terms of supervised release by unlawfully possessing a firearm, the district court reasonably could have viewed these undisputed facts about his conduct as aggravating. And it was well within the district court's discretion to give little weight to the "mitigating circumstances leading up to the shooting." As Lincoln acknowledges, the circumstances the court allegedly refused to consider "would make up a self-defense claim" to the assault and battery charges, which he agrees were "not at issue at the revocation hearing." So we cannot say that those circumstances were "due significant weight" in the sentencing calculus. *See Irey*, 612 F.3d at 1189.

Nor does the district court's reasoning for its choice of sentence rely on disputed facts about the incident on January 3, 2021. While Lincoln may have taken the gun from a patron earlier in the evening, he still possessed a gun while working as a security guard when he knew such possession was unauthorized. Nothing suggests that Lincoln lacked the time or opportunity to relinquish possession of the gun to another security guard. Plus, the court explained that, even assuming the shooting was justified, it viewed Lincoln's post-shooting flight from the scene as an aggravating factor. Lincoln fails to address that piece of the district court's

reasoning, which supports its view that an upward variance was appropriate.

For these reasons, Lincoln has not shown that the district court abused its discretion by failing to consider factors that were due significant weight, or that his sentence is otherwise unreasonable "considering the complete record, the § 3553(a) factors, and the substantial deference we give sentencing courts." *Osorto*, 995 F.3d at 822. We therefore affirm his sentence.

**AFFIRMED.**