[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10471

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERT DEWAYNE LASHLEY,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:22-cr-00027-JA-PRL-1

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Robert Lashley appeals his sentence of 36 months of imprisonment imposed after he pleaded guilty to committing a hate crime. 18 U.S.C. § 249(a)(1). Lashley argues that his sentence is substantively unreasonable. We affirm.

Lashley agreed to plead guilty to violating the Hate Crimes Prevention Act, *id.*, by "willfully caus[ing] injury to D.B., a Black man, because of D.B.'s actual and perceived race" by "repeatedly call[ing] D.B. racial slurs and repeatedly str[iking] D.B. with closed fists." Lashley admitted in his factual proffer that on November 17, 2021, he and his brother, Roy, went to a store in Citrus Springs, Florida. Lashley entered the store first, and Roy entered as D.B. left. Roy then asked Lashley if he saw "that big Black n****r?" At the cash register, Roy asked the clerk if she saw D.B. push him as he walked through the door, and the clerk said, "No." Roy said that D.B. pushed him and that "that n****r needs to be taught a lesson." The surveillance video confirmed that D.B. did not push or contact Roy. After the store clerk and manager admonished Lashley and Roy for using racial slurs in the store, the brothers left, and Roy told Lashley that they were "going to go get that n****r."

Lashley and Roy followed D.B. into the parking lot. Lashley ran to D.B. and "struck him numerous times with his fists." Roy retrieved an axe handle from his truck and struck D.B. multiple

times with it. D.B. raised his arms to block the attacks and punched back in self-defense. Before, during, and after the attack, Lashley and Roy directed racial slurs at D.B. At some point during the attack, Roy drove away from the scene, but Lashley stayed. When Roy returned on foot, they continued attacking D.B. with their fists. Police officers arrested Lashley and Roy at the scene. D.B., who had sustained injuries to his face and legs and a laceration to the inside of his mouth, was taken to the hospital.

Lashley's presentence investigation report provided a base offense level of 12, United States Sentencing Guidelines Manual § 2H1.1(a)(2) (Nov. 2021), added three levels because he selected a victim based on their actual and perceived race, *id.* § 3A1.1(a), and subtracted two levels for his acceptance of responsibility, *id.* § 3E1.1(a). Based on a total offense level of 13 and a criminal history category of I, the report provided an advisory sentencing range of 12 to 18 months of imprisonment. Lashley requested a sentence of one year and one day of imprisonment. The government requested a sentence of 18 months of imprisonment.

At sentencing, the district court confirmed that although the government initially indicted Lashley for aiding and abetting a hate crime using a dangerous weapon and attempting to cause bodily injury, 18 U.S.C. §§ 249(a)(1), 2, the superseding indictment omitted the dangerous-weapon and aiding-and-abetting language as part of Lashley's plea agreement. The government stated that the district court still could hold Lashley accountable for Roy's use of the axe handle in determining a reasonable sentence.

Lashley argued that it was unforeseeable to him that Roy would retrieve a weapon and that there was insufficient evidence that he knew Roy was using the axe handle during the fight. The district court stated that it disbelieved that someone involved in a three-person fray could be unaware that another person was holding a red axe handle. Lashley argued that deterrence should not be a significant factor because the incident was an unplanned, random act of violence that his brother instigated. He also argued that although race was a motivating factor, he was provoked by Roy's false accusation that D.B. had assaulted him. Lashley allocuted and apologized to D.B. The district court clarified that although Roy provoked the altercation, Lashley physically confronted D.B. and continued the attack after Roy left. The government argued that regardless of Roy's role in provoking the encounter, Lashley still took an active role in the brazen and prolonged attack in daylight, in a store parking lot, and in the presence of nearly a dozen witnesses while he used racial slurs. The government agreed with the district court that it was unreasonable that Lashley would not have seen his brother with an axe handle during the fight.

The district court found that the Guidelines were insufficient to address the serious nature of the offense and recognized that this was a rare occasion in which it disagreed with both parties' sentencing recommendations. In weighing the statutory sentencing factors, 18 U.S.C. § 3553(a), the district court stated that it considered that Lashley had only one prior felony and three misdemeanor convictions and overcame a substance abuse problem. It considered that he consistently worked and had a stable

relationship and a family who supported him. It found that Lashley was devoted to Roy, who was the dominant sibling and often took advantage of Lashley, such that Lashley was a potential danger to the public when he was with Roy. As for the circumstances of the offense, the district court found it unimaginable that Lashley did not know that Roy was hitting D.B. with an axe handle. The district court also discussed the brazen nature of the attack and stated that it had considered several possible explanations for the attack—that the brothers thought that no one would care if they beat D.B. because of his race; that they thought they were entitled under the law to beat D.B. because of his race; or that they were consumed with uncontrollable rage—but none weighed in his favor.

The district court sentenced Lashley to 36 months of imprisonment. Lashley objected that his sentence was procedurally and substantively unreasonable, and he objected to the finding that he was aware that Roy was using a dangerous weapon during their attack. The district court clarified that it would have imposed the same sentence regardless of the dangerous-weapon finding, based on its consideration of the statutory sentencing factors.

We review the reasonableness of a sentence, including a sentence above the advisory guideline range, for abuse of discretion. *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013). The district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in

considering the proper factors." *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021). We will disturb "the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

The district court did not abuse its discretion when it varied upward to address the seriousness of Lashley's hate crime against D.B. The district court enjoys discretion to impose a sentence outside the advisory guideline range when its justification is sufficiently compelling to support the degree of its variance. *Id.* at 1196. The district court explained in detail why the facts were sufficiently compelling to support the upward variance. It considered several mitigating factors, including Lashley's relatively insignificant criminal history, supportive family, and the power dynamics between him and Roy. But the district court also considered that Lashley, who took an active role in initiating and continuing the physical encounter even after Roy temporarily left the scene, attacked D.B. "in a parking lot in broad daylight in the presence of witnesses, one of which was recording the attack" and that Lashley, undeterred, continued beating D.B. while using racial slurs. The district court expressed that these circumstances were so "hard to imagine" that it could not "figure out how" the vicious attack persisted.

Lashley disagrees with how the district court weighed Roy's use of the axe handle to hit D.B. during the attack, but Lashley fails to establish that the district court clearly erred in disbelieving that he was unaware that Roy was using a weapon to hit D.B. And we disagree that Lashley could be entitled to relief based on an unwarranted sentencing disparity after Roy, whose advisory guideline range accounted for his use of the weapon to inflict bodily injury and his more extensive criminal history, received a nine-month upward variance to a sentence of 60 months of imprisonment. *See United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015). The district court reasonably determined that varying upward 18 months above Lashley's advisory guideline range to impose a sentence far below the statutory maximum of ten years was necessary to address the seriousness of his crime. *See United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014).

We **AFFIRM** Lashley's conviction and sentence.