[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14082

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WALT B. SANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:23-cr-00015-TKW-MJF-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Walt Sanders appeals his total 36-month sentence imposed after he pleaded guilty to (1) fleeing and eluding law enforcement; (2) damage to government property; (3) driving under the influence; and (4) trespass onto a military installation. He argues that his sentence, which was an upward variance from the applicable guidelines range, is substantively unreasonable. After review, we affirm.

## I.      Background

In 2023, a grand jury indicted Sanders on four counts: (1) fleeing and eluding law enforcement in violation of Fla. Stat. § 316.1935(3), and 18 U.S.C. §§ 7, 13; (2) damaging government property in excess of the sum of $1,000, in violation of 18 U.S.C. § 1361; (3) driving under the influence, in violation of Fla. Stat. § 316.193(1)(a), (1)(c), (3)(C)1., (4)(a)2., and (4)(b)2., and 18 U.S.C. §§ 7, 13; and (4) trespass on a military installation, in violation of 18 U.S.C. § 1382. Sanders pleaded guilty as charged, pursuant to a written plea agreement.[1]

According to the stipulated factual basis for the plea, around 5:25 p.m. on March 22, 2023, Sanders was observed driving his truck erratically on a highway near Mexico Beach, Florida. He approached a gate of Tyndall Air Force Base ("the base") "at a high

---

[1] The plea agreement did not contain an appeal waiver.

rate of speed," when he stopped, made a U-turn, and then ran a red light, nearly hitting other vehicles at the intersection. Sanders then turned toward another gate to the base and was approached by the guard. An officer with Tyndall's Security Forces Squadron ("SFS") positioned his car behind Sanders's truck, and the gate guard placed a star barrier in front of Sanders's vehicle to prevent him from proceeding onto the base. The guard requested identification from Sanders and determined that Sanders was not military and did not have authorization to enter the base. The guard observed a strong odor of alcohol when speaking with Sanders. Sanders also had slurred speech and bloodshot eyes, was confused, kept turning his head away, and "suddenly asked for a lawyer." Officers observed two guns in plain view in Sanders's truck as well as two bottles of vodka in the passenger seat.

When officers instructed Sanders to exit the vehicle, he did not comply. Instead, he drove his vehicle through the star barrier and past the gate onto the base, dragging the barrier behind him. A high-speed chase ensued on the base between Sanders and SFS officers in excess of 80 mph in a 30-mph zone. During this time the base had to halt all traffic, "which was significant at the time." Sanders eventually hit another star barrier when exiting the base and entered the main road. He then made an illegal U-turn, driving the wrong way against traffic, and the chase continued. Officers observed that "Sanders appeared distraught, [was] driving with his left hand, and [was] holding a handgun with his right hand." Local police eventually intercepted Sanders at a boating ramp parking lot. Sanders "stopped his vehicle, exited the vehicle, [and]

disrobed" before being placed under arrest. The entire incident lasted approximately 28 minutes.

A search of Sanders's vehicle revealed two loaded pistols and a loaded AR-15. Breathalyzer tests administered after Sanders's arrest put his breath alcohol level at .227 and .229, well above the legal limit. At a post-arrest interview the following day, Sanders told officers that his estranged wife, J.S., had recently obtained a protection from abuse order against him in Alabama.[2] On the day of the incident, Sanders began drinking around noon at his home in Alabama, and he decided to drive to Mexico Beach, Florida. He claimed that he made a wrong turn, which is how he ended up at the base. He asserted that he always traveled with loaded guns for personal protection and did not intend to harm anyone.[3]

---

[2] According to undisputed statements in the presentence investigation report ("PSI"), the protection order was put in place on February 2, 2023, after Sanders and J.S. had marital problems because of Sanders's excessive drinking, including instances where he had taken out firearms while drunk and fired them into the air. Per the terms of the protective order, Sanders was not to have contact with J.S. and was not to be in possession of any firearms or ammunition. According to J.S., Sanders violated the order numerous times, and he had pending charges for violating the order.

[3] J.S.'s parents live in Mexico Beach. On the date of the underlying offenses, J.S., her son, and her parents were eating dinner at a restaurant near the base and witnessed part of the police chase. A forensic search of Sanders's phone revealed that Sanders had been actively trying to locate J.S.

23-14082               Opinion of the Court                    5

For purposes of calculating the guidelines range, Counts 1, 2, and 3 were grouped together.[4] *See* U.S.S.G. § 3D1.2 (explaining when counts should be grouped for purposes of calculating the guidelines range). Count 2—damage to government property— served as the basis for the guidelines calculation, which carried a base offense level of 6. *See id.* § 3D1.3(a) (explaining how to determine the offense level for grouped counts); § 2B1.1(a)(2) (setting forth the base offense level for a violation of 18 U.S.C. § 1361). An eight-level enhancement applied because the offense involved "(A) the conscious or reckless risk of death or serious bodily injury; or (B) possession of a dangerous weapon (including a firearm) in connection with the offense." *Id.* § 2B1.1(b)(16). Following a two-point reduction for acceptance of responsibility, Sanders's adjusted total offense level of 12 and his criminal history score of I[5] resulted in an advisory guidelines range of 10 to 16 months' imprisonment. He faced a statutory maximum term of 15 years' imprisonment as to Count 1; 10 years' imprisonment as to Count 2; 1 year imprisonment as to Count 3; and 6 months' imprisonment as to Count 4. In the section of the PSI entitled

---

[4] As a Class B misdemeanor, Count 4 was excluded from the guideline calculation.

[5] Sanders had a prior 2008 conviction for driving under the influence and reckless driving, but it did not score criminal history points. He also had a 2007 arrest for driving under the influence, but disposition of the case was unknown. And he had pending state charges for violation of a protection order (Alabama), and criminal mischief, violation of a domestic violence injunction—possession of a firearm, driving while under the influence, and aggravated stalking (Florida).

"factors that may warrant a sentence outside of the advisory guideline system," the probation officer noted that, although the government had elected not to charge Sanders, the protection order prohibited him from possessing firearms at the time of the offense. And had the government charged him with a federal firearms offense, he would have faced a statutory maximum of 15 years' imprisonment for each firearm and an advisory guidelines range of 18 to 24 months' imprisonment.[6]

At sentencing, the district court adopted the guidelines range in the PSI. The government argued for an upward variance based on the sentencing factors in 18 U.S.C. § 3553(a). The government emphasized that the nature and circumstances of the offense warranted a sentence above the guidelines range pointing to the following facts: Sanders elected to drive to Mexico Beach, Florida from his home in Alabama while extremely intoxicated with three loaded firearms; he drove erratically at a high rate of speed and ran a red light, almost causing a car accident; after being ordered to stop, he sped off, started a high speed chase, and damaged government property; drove the wrong way on a highway; was observed driving with one hand while holding a gun in the other; and his actions endangered the lives of service members, law enforcement, and civilians. The government further asserted that Sanders's intention at that time was relevant, and that his intention was to locate his estranged wife, who was

---

[6] Both Sanders and the government raised objections to the PSI, but they are not relevant to the issue on appeal.

living in Mexico Beach with her family, as evidenced by his numerous texts to her despite the protection order as well as searches on his phone. The government explained that the only reason that it did not charge Sanders with interstate violation of a protective order is that Sanders never made it to his wife, but if he had been so charged, the guidelines range would have been 27 to 33 months' imprisonment. Additionally, had the government charged him with possession of a firearm by a prohibited person, the guidelines range would have been 18 to 24 months' imprisonment. Thus, the government urged the court to take these facts into account and to consider the need to protect the community (particularly J.S.), and to consider Sanders's prior history of DUIs and reckless driving.

Sanders argued that the guidelines range adequately reflected the seriousness of his offense because he received an eight-level enhancement which accounted for the risky fleeing and eluding behavior.[7] However, based on questioning from the court regarding the enhancement, Sanders admitted that the same eight-level enhancement applied regardless of whether the offense involved (A) only reckless risk of death or serious bodily injury; (B) only possession of a dangerous weapon in connection with the

---

[7] In response to Sanders's contention that the guidelines range adequately accounted for the seriousness of his offense, the government asserted that it did not because the guidelines were "anchored" to the damage to government property offense, which carried a low base offense level and was "such a minimal part of what the intent and the actions of the defendant were that day."

offense; or (C) both aggravating circumstances.  Sanders's counsel further contended that the court should consider that, although Sanders had an alcohol problem, "when he's sober . . . he's kind, he's responsible, [and] he is a hardworking, well-liked, productive person," as evidenced by a letter of support from his coworker. Additionally, counsel emphasized that Sanders was college-educated, had a stable job as a clinic director of a physical therapy program (although he quit this job prior to the incident), had no criminal history other than a prior DUI, and had a home and a family.

Counsel also disputed that Sanders was attempting to find J.S. on the day of the incident; instead, she asserted that Sanders was traveling to Panama City Beach to continue drinking. Regardless, Sanders's counsel argued that any concerns regarding a potential violation of the protective order would be addressed in the pending state cases.  Counsel maintained that the whole situation "ha[d] been a huge wake-up call" for Sanders, and that his pretrial detention of eight months had resulted in "forced sobriety," which had given Sanders a chance to "consider the events of the past few years and what has happened with his family and his life."  Accordingly, Sanders requested a guidelines sentence.

Sanders also made a statement to the court, apologizing for his actions, and assured the court that he would comply with whatever punishment the court imposed.  He also stated that he would secure employment and provide for his family upon release.

The district court explained that, after considering the guidelines and the § 3553(a) factors, a within guidelines sentence was inappropriate based largely on the nature and circumstances of the offense. The court explained that, in its view, the fleeing and attempting to elude law enforcement was "the most serious component of [Sanders's] crime." The district court explained that the eight-level guidelines enhancement did not really account for the complete picture of aggravating circumstances in Sanders's case because it applied regardless of whether Sanders engaged in reckless driving or possessed a firearm or, as here, did both things. The district court emphasized that Sanders was "lucky to be alive" and that he "could have easily killed [himself] or somebody else." Additionally, the district court noted that Sanders was very lucky that the "military exercised restraint and didn't open fire on [him] when [he] breached [the] . . . base." The district court explained that it believed Sanders felt that this situation was a wake-up call and noted that the whole situation was "unfortunate" because Sanders had "a lot of positive" things in his personal characteristics and life when he was not drinking. The court then discussed the need for deterrence, the need for restitution, and Sanders's need for alcohol dependence treatment.

With regard to Sanders's intent that day, the district court explained that it would not consider his intent because, regardless of intent, Sanders's actions that day were not fully captured by the

guidelines range.[8]  Concerning the firearms, the district court noted that having three loaded firearms went beyond personal protection and was concerning given that the protective order prohibited Sanders from possessing firearms.  Moreover, the district court emphasized that Sanders's offense went beyond mere fleeing and eluding, damage to government property, and trespass on a military base—he engaged in a high-speed chase, went the wrong way several times in traffic, put many people and servicemen at risk, and diverted valuable military resources to deal with the situation.  Finally, the district court noted the higher guidelines ranges that Sanders would have faced had the government charged him with the other offenses.  Accordingly, the district court imposed a total sentence of 36 months' imprisonment to be followed by 3 years' supervised release.  This appeal followed.

## II.     Discussion

Sanders argues that his sentence is substantively unreasonable because the district court put "improper, excessive weight" on the nature and circumstances of the case—circumstances that were already accounted for by the eight-level guidelines enhancement.[9]

---

[8] Nevertheless, the court noted that it tended to agree with the government that Sanders was looking for his wife.

[9] Additionally, Sanders asserts briefly in passing that the district court failed to give "proper weight" to his mitigation evidence and did not consider the need to avoid unwarranted sentencing disparities among defendants with similar records.  These conclusory arguments fail.  The district court clearly considered all of Sanders's arguments in mitigation and was not required to

We review the reasonableness of a sentence under a deferential abuse of discretion standard, asking whether the sentence is substantively reasonable in light of the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, the district court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant"; the guidelines range; the "kinds

---

explicitly address mitigation. *See United States v. Taylor*, 997 F.3d 1348, 1354–55 (11th Cir. 2021) ("The district court is not required to explicitly address each of the § 3553(a) factors or all of the mitigating evidence. Rather, "[a]n acknowledgment [that] the district court has considered the defendant's arguments and the § 3553(a) factors will suffice."). Similarly, there is no requirement that the district court discuss each of the § 3353(a) factors. *Id.* Therefore, just because the district court did not discuss the need to avoid unwarranted sentencing disparities does not mean that the court failed to consider this factor. Moreover, Sanders fails to proffer any examples of the sentences received by similar defendants who have been found guilty of similar conduct. Thus, he has failed to carry his burden of demonstrating that there is an unwarranted disparity concern. *United States v. Johnson*, 980 F.3d 1364, 1386 (11th Cir. 2020) (The "[d]efendant bears the burden of showing that an unwarranted sentencing disparity renders his sentence substantively unreasonable.").

of sentences available"; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution." *Id.* § 3553(a)(1), (3)–(4), (6)–(7).

Importantly, the weight given to a particular § 3353(a) factor "is committed to the sound discretion of the district court," and it is not required to give "equal weight" to the § 3553(a) factors. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation omitted). "We will not second guess the weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256.

"Upward variances are imposed based upon the § 3553(a) factors." *Butler*, 39 F.4th at 1355. Notably, "[t]he district court may vary upward based on conduct that was already considered in calculating the guideline range." *Taylor*, 997 F.3d at 1355. No presumption of reasonableness or unreasonableness applies to a sentence that lies outside the advisory guidelines range. *Butler*, 39 F.4th at 1355.

In reviewing the reasonableness of a sentence outside the guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."

*Gall*, 552 U.S. at 51. We will "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotations omitted).

Here, the district court did not abuse its discretion in varying upward from the applicable guidelines range of 10 to 16 months' imprisonment and imposing a sentence of 36 months' imprisonment. The district court explained that an upward variance was appropriate because of the nature and circumstances of the offense and supported its decision with adequate justification—namely, the highly aggravating circumstances present. Thus, the district court correctly considered the particularized facts of the case and acted within its discretion in giving more weight to the nature and circumstances of the offense over the other sentencing factors. 18 U.S.C. § 3553(a)(1); *Rosales-Bruno*, 789 F.3d at 1254. Although Sanders argues that the guidelines range accounted adequately for his dangerous behavior, the district court was entitled to consider the aggravating circumstances of the offense even if they were already part of the guidelines calculation. *Taylor*, 997 F.3d 1355.

Contrary to Sanders's argument, the district court did not solely consider the nature and circumstances of the offense to the exclusion of the other relevant § 3553(a) factors. Rather, the district

court's lengthy explanation established that the court considered the relevant § 3553(a) factors, including Sanders's personal history and characteristics, the need to provide for deterrence, the need to protect the public, the guidelines range, and the need to provide restitution. *See* 18 U.S.C. § 3553(a)(1), (2)–(4), (7). Finally, we note that Sanders's 36-month sentence is well-below the statutory maximum of 15 years' imprisonment, which is an indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is below the statutory maximum is an indicator of reasonableness).

Accordingly, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (*en banc*) (quotation omitted). Consequently, we conclude that Sanders's sentence is substantively reasonable, and we affirm.

**AFFIRMED.**